# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL S. EVANS,            )
                                    )
                Plaintiff,       )
                                    )
     v.                      )          Civil Action No. 16-2274 (BAH)
                                    )
FEDERAL BUREAU OF PRISONS,    )
                                    )
              Defendant.     )

## MEMORANDUM OPINION

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), a component of the United States Department of Justice ("DOJ"). BOP has now moved for summary judgment, Def.'s Mot. Summ. J., ECF No. 16, which motion is granted, for the reasons discussed below.

## I. BACKGROUND

The plaintiff is a federal prisoner who, while incarcerated at the Gilmer Federal Correctional Institution in Glenville, West Virginia ("FCI Gilmer"), "was involved in a fight in the prison dining room[.]" Def.'s Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem."), at 1, ECF No. 16-1. The plaintiff claims to have been "brutally attacked, and stabbed, by surprise" with a Phillips-head screwdriver by another inmate. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), *filed with* Pl.'s Aff. & Reply to Def.'s Mot. for Summ. J. by Pl. Michael S. Evans ("Pl.'s Decl.") ¶ 2, ECF No. 19. In contrast, BOP staff consider the incident "a fight between [the plaintiff] and his attacker," Pl.'s Decl. ¶ 4, for which the plaintiff was sanctioned, *see id.* ¶¶ 3-5, 9.

Subsequently, the plaintiff "pursued civil actions and suits under the Federal Tort Claims Act and Bivens – 42 U.S.C. § 1983 against the BOP based upon its officers['] delayed response

1

and intervention i. . . , and their failure to properly secure the tool used to stab [him]." Pl.'s Decl. ¶ 6. These efforts proved unsuccessful – the suits "were ultimately dismissed based on the BOP's disclaiming ownership of the tool used in [the] attack and stabbing." *Id.* ¶ 8.

"In order for [the plaintiff] to effectively address [his] legal issue[s]," Compl., Ex. A at 1, in February 2016, the plaintiff submitted a request to the BOP for the following information:

- Names, numbers, and addresses to all companies that shipped and/or delivered tools, recreation equipment, maintenance equipment, and machines to [FCI Gilmer] from January 2003, to June 2013.
- . . . Receiving and Departure Logs for all tools, recreation equipment, maintenance equipment, and machines shipped and/or delivered to [FCI Gilmer] from January 2003, to, June 2013.
- Names and pictures of all tools, recreation equipment, maintenance equipment, and machines shipped and/or delivered to [FCI Gilmer] from January 2003, to, June 2013.
- A copy of the video footage of the May 02, 2013 incident of Michael Evans being ass[a]ulted in the inmate din[]ing area at [FCI Gilmer].

*Id.*, Ex. A at 1-2. BOP staff estimated that the cost of its response to the request would be $14,320.00. *See generally* Def.'s Mem., Decl. of Sharon Wahl ("Wahl Decl."), Ex. 2. The plaintiff was offered an opportunity to pay the estimated cost in full, or to reformulate his request "to meet [his] needs at a lower cost." Wahl Decl., Ex. 2 at 1. Opting for the latter, the plaintiff modified his request as follows:

I want to be provided with a copy of the video footage of the May 02, 2013 incident of Michael Evans being assaulted in the inmate dinning [sic] area at F.C.I. Gilmer.

I enclosed a picture of a Phillips head screwdriver, the screwdriver may have been a[] maintenance accessory tool that came with recreaction [sic], or maintenance equipment. I would like the name of the company that made the tool, along with the phone number and mailing address of that company. I would like to know

> what is the tool used for and what equipment it came with, and when
> that equipment was delivered to F.C.I. Gilmer[.]

Wahl Decl., Ex. 3.

BOP staff located one video recording responsive to the plaintiff's request. *See id.* ¶ 9. By letter, dated April 19, 2016, the BOP notified the plaintiff: (1) it withheld the video in full under FOIA Exemptions 2, 7(C), 7(E), and 7(F); (2) it was not required to respond to the plaintiff's inquiries or to create records in response to a FOIA request; and (3) staff at FCI Gilmore could not determine "where the tool originated from." *Id.*, Ex. 4 at 1.

The plaintiff pursued an administrative appeal to DOJ's Office of Information Policy ("OIP"). Compl. at 3. OIP denied the appeal "on partly modified grounds," that is, under FOIA Exemptions 7(C), 7(E), and 7(F). Wahl Decl. ¶ 15; *see id.*, Ex. 6 at 1. OIP also explained "that [the] BOP does not have the capability to segregate images potentially responsive to [the plaintiff's] request from the images of third parties on video recordings." *Id.*, Ex. 6 at 2. Lastly, OIP notified the plaintiff that the BOP need not have answered "specific questions . . . regarding the screwdriver" because the FOIA does not require an agency to answer questions, create records, or conduct research in response to a FOIA request. *Id.*, Ex. 6 at 2. According to the plaintiff, the BOP "has improperly withheld agency records." Compl. at 3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc.*

*v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Indeed, the D.C. Circuit has observed that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521, 527 (D.C. Cir. 2011).

"The Court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal quotation marks omitted). Upon receiving a FOIA request, federal agencies are "required to perform more than a perfunctory search" to identify potential responsive records. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Rather, as the D.C. Circuit succinctly summarizes, "[t]o prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 57, 68 (D.C. Cir. 1990) (alterations in original)). The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides "'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' providing and no 'indication of what each [component's] search specifically yielded.'" *Id.* at 403 (quoting *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (alterations in original)); *see also Truitt v. Dep't of*

*State*, 897 F.2d 540, 542 (D.C. Cir. 1990)( "If . . . the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

In addition to demonstrating the adequacy of the search, the agency must "demonstrate that the records have not been improperly withheld." *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (citation and internal quotation marks omitted). An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate. *See, e.g., Judicial Watch*, 726 F.3d at 215 ("In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" (alteration adopted) (quoting *Consumer Fed'n of Am.*, 455 F.3d at 287)).

## III. DISCUSSION

The plaintiff challenges both the sufficiency of the BOP's search for responsive records and BOP's explanations for the withholding of records. Each of these challenges are addressed *seriatim*.

### A. Adequacy of the BOP's Search

The plaintiff deems the BOP's search inadequate because the agency did not "search its tool and equipment inventories, which is required by its policy regulations for all tools and equipment entering into the institution." Pl.'s Decl. ¶ 16 p. 4. "Neither [his] initial, nor [his] reformulated[] request [seeks] the Defendant's answer to any questions, the Defendant's creation

of records, or the Defendant's explanation or verification of the content of the records or information sought." *Id.* ¶ 16 p. 3.  Thus, the plaintiff contends, the BOP erred in construing his reformulated request "as asking it to answer questions or create records.  *Id.* ¶ 16 p. 4; *see id.* ¶ 13.

The plaintiff's reformulated request indeed calls for responses to inquiries: the plaintiff supplied a copy of a screwdriver, and expected the BOP to identify its manufacturer, to provide the manufacturer's phone number and mailing address, to specify the tool's use and to explain how and when a particular screwdriver found its way to FCI Gilmer.  The FOIA is designed "to provide access to those [records] which [an agency] in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).  Any substantive response to the plaintiff's inquiries about the screwdriver exceeds the FOIA's scope, and the BOP was not obligated to answer questions presented in the guise of a FOIA request.[1]  *See Schoenman v. FBI*, 573 F. Supp. 2d 119, 140 (D.D.C. 2008); *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir.), *cert. denied*, 484 U.S. 803 (1987).

The plaintiff offers no objection to the search for the video recording.  In this regard, the BOP's declarant describes the search as follows:

> BOP determined that any records related to Plaintiff's request for video footage would be located in the SIS Department at FCI Gilmer, which is the department tasked with investigating inmate assaults, crimes, protection cases, and so forth, and is also tasked with monitoring and maintaining video footage related to significant events.

---

[1]     The plaintiff argues that the BOP was obligated to provide two hours of search time and 100 pages of records at no charge and a Vaughn Index pertaining to the Phillips-head screwdriver.  Pl.'s Decl. ¶ 16 p. 3 (referring to 28 C.F.R. § 16.10(d)(4), (e)(1)); *see generally* Pl.'s Reply to Def.'s Reply in Support of Def.'s Mot. for Summ. J.  Not so.  As drafted, the reformulated FOIA request makes particular inquiries about a particular screwdriver.  Without more, the BOP would have been "unable to ascertain what records to search." Wahl Decl., Ex. 4.

> BOP performed a search for the video footage, which was located by FCI Gilmer SIS and maintained by the legal office processing the FOIA request. The video shows several different camera angles of an inmate-on-inmate assault which occurred on May 2, 2013 in the inmate dining hall at FCI Gilmer and the immediate response to that assault by law enforcement personnel.

Wahl Decl. ¶¶ 9-10.

While short on detail, the BOP's supporting declaration demonstrates that the search was reasonably calculated to locate responsive records. The SIS Department at FCI Gilmer is responsible for investigating inmate assaults and for monitoring and maintaining video recordings of significant events at that facility, and there staff found a video recording of the incident described in the plaintiff's FOIA request. Accordingly, the plaintiff's challenge to the adequacy of the search conducted fails.

**B. Exemption 7**

The plaintiff argues that the BOP has improperly the video-recording of his assault, which recording has been withheld under FOIA Exemptions 7(C), 7(E), and 7(F).

### 1. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "In assessing whether records are compiled for law enforcement purposes, [the District of Columbia Circuit emphasizes] that the focus is on how and under what circumstances the requested files were compiled . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotation marks omitted).

The BOP's supporting declaration neither states that the BOP is a law enforcement agency nor states that the responsive video was compiled for a law enforcement purpose.  As the defendant points out, however, the BOP's "mission includes 'provid[ing] for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]'"  Def.'s Mem. at 8 (quoting 18 U.S.C. § 4042(a)(2)).  It follows, then, that video footage of an inmate-on-inmate assault maintained by the department responsible for investigating inmate assaults at FCI Gilmer, *see* Wahl Decl. ¶¶ 9-10, was compiled for a law enforcement purpose.  The Court concludes that the video recording is a law enforcement record within the scope of Exemption 7.

### 2. Exemptions 7(C), 7(E) and 7(F)

"[T]he video footage contain[s] the images of approximately 70 or more other individuals, including other inmates and BOP staff members, in addition to [the plaintiff]."  Wahl Decl. ¶ 19.  The BOP withholds the video in full under FOIA Exemptions 7(C), 7(E) and 7(F), which protect:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . , (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . , (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7).

Disclosure of the identities of individuals other than the plaintiff, the declarant states, "may constitute an unwarranted invasion of [their] privacy."  Wahl Decl. ¶ 19.  The BOP identifies "no substantial public interest in the identities of the third parties . . . that outweighed

the individuals' privacy interests." *Id.* ¶ 20; *see id.*, Ex. 7. In addition, the declarant explains that release of the video footage not only "would reveal the specific law enforcement methods employed in responding [to] and/or [investigating] the prohibited conduct," but also would show "the location of video cameras." *Id.* ¶ 21. If this information were disclosed, the declarant explains, prisoners "could . . . modify[] their criminal behavior to prevent detection and circumvent the methods law enforcement officers use to discover the existence of and investigate the conduct of prisoners." *Id.*; *see id.*, Ex. 7. Lastly, the BOP's declarant explains, disclosure of the video means disclosure of the identities of other individuals, "regardless of whether they played a role in the assault or the response, or failed to intervene, could endanger [their lives] or their safety . . . at a later time, particularly in a prison environment where there exist threats of retaliation and continued violence." *Id.*; *see id.*, Ex. 7.

The plaintiff makes three arguments in favor of the video's release. First, he explains that "[d]isclosure of the video . . . is only for the purposes of federal administrative and judicial proceedings." Pl.'s Decl. ¶ 17 p. 4-5. It would be "admissible in a criminal proceeding, despite the Defendant's claimed FOIA exemptions," and the plaintiff claims an entitlement to the video in order "to seek administrative and judicial review, including civil damages." *Id.* ¶ 17 p. 5. Second, the plaintiff notes that a prisoner is "not permitted to personally to possess the requested . . . video." *Id.* In this circumstance, release of the video means that "it will be held and controlled by BOP staff . . . subject to whatever restrictions the BOP . . . prescribe[s]," *id.* It would not be a release to the general public. Third, the plaintiff asserts that "video footage of [the] assault is segregable," and that "[t]he Defendant possesses the computer capabilities to provide the . . . footage" he requires. *Id.* None of his arguments is persuasive.

The FOIA pertains to the public's access to government records. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.") (citations omitted). Neither the identity of the requester nor the requester's intended use of responsive records is relevant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("[A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information."); *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989) ("In sum, [a FOIA requester's] need or intended use for the documents is irrelevant."). Whether the video recording would be disclosed in the context of civil litigation or a criminal proceeding has no bearing in a FOIA case. *See Jones v. FBI*, 41 F.3d 238, 250 (6th Cir. 1994) (commenting that "FOIA's "scheme of exemptions does not curtail a plaintiff's right to discovery in related non-FOIA litigation; but neither does that right entitle a FOIA plaintiff to circumvent the rules limiting release of documents under FOIA."). A release of records under the FOIA must be treated as a release to the general public. *Favish*, 541 U.S. at 172 ("As a general rule, if the information is subject to disclosure, it belongs to all."). Any restrictions on access to the video recording necessarily imposed by virtue of the plaintiff's current incarceration are of no moment.

The plaintiff asserts – without support – that "[t]he video of [the] assault is segregable." Pl.'s Opp'n at 1. In contrast, the BOP's declarant avers that staff "reviewed the video for any segregable material, but concluded that there is [none]." Wahl Decl. ¶ 23. Further, she states, the BOP "is technologically unable to segregate any portion of the video recording," *id.*, such that it has no means by which to redact the images of third parties. The plaintiff's unsupported

assertion neither rebuts the presumption of good faith afforded the BOP's supporting declaration nor shows evidence of agency bad faith.

The Court concludes that the BOP properly withheld the video recording in full. The BOP has averred that release of the video necessarily means release of the images of third parties, and such release could reasonably be expected to constitute an unwarranted invasion of their personal privacy. *See Mingo v. U.S. Dep't of Justice*, 793 F. Supp. 2d 447, 455 (D.D.C. 2011) (affirming the BOP's decision to withhold "video disks containing the images of more than 50 [inmates involved in an altercation at a federal penitentiary] in their entirety under FOIA exemption 7(C)"). Further, the BOP demonstrates that release of the video recording necessarily identifies the location of the cameras and the methods employed in responding to or investigating incidents such as the inmate-on-inmate assault recorded here. *See Ford v. Dep't of Justice*, 208 F. Supp. 3d 237, 253 (D.D.C. 2016) (noting that disclosure of bank surveillance camera footage reveals camera locations and therefore implicates exemption 7(E)). The BOP's reliance on Exemption 7(F) is not so clearly supported. Nevertheless, its reliance on Exemptions 7(C) and 7(E) suffices, even if Exemption 7(F) does not apply. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992) (finding records exempt from FOIA under one exemption and declining to address any other).

**IV. CONCLUSION**

The BOP construed the plaintiff's reformulated FOIA request reasonably, conducted a search for responsive records adequately, and justified its decision to withhold the video recording in full. Accordingly, the BOP complied with its obligations under the FOIA, entitling the agency to summary judgment in its favor. An Order is issued separately.


DATE: February 5, 2018                    /s/ *Beryl A. Howell*

                                          BERYL A. HOWELL
                                          Chief Judge